**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

BYRON L. CONWAY,
ADC #113285                                                                          PLAINTIFF

V.                                          5:11CV00142 JMM/JTR

WENDY KELLEY,
Deputy Director of Health,
Arkansas Department of Correction                                    DEFENDANT

<u>**ORDER**</u>

Plaintiff Byron L. Conway is a prisoner at the Grimes Unit of the Arkansas Department

of Correction ("ADC").  In this *pro se* § 1983 action, he alleges that Defendant Wendy has failed

to take proper corrective action in response to his grievance appeals challenging the medical care

he received, since April of 2009, for: (1) chronic digestive problems; (2) neuritis or neuralgia in

his neck; (3) Peyronie's disease; (4) erectile dysfunction; and (5) migraine headaches.[1]

Defendant Kelley has filed a Motion for Summary Judgment, a Brief in Support, a

Statement of Undisputed Facts, and a Reply.  Plaintiff has filed a Response, a Brief in Support,

and a Statement of Disputed Facts.  For the reasons stated below, Defendant Kelley's Motion is

GRANTED.

I.        <u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is "no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The moving party must inform the court of the legal basis for its motion and produce evidence

---

[1] Plaintiff has *not* named as Defendants any of the medical providers who treated these
medical problems.

demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). Once the moving party does so, the nonmoving party must submit evidence demonstrating that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Torgerson*, 643 at 1042. Importantly, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead, must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586–87 (1986); *Torgerson,* 643 F.3d at 1042. Finally, the court must view the disputed facts in the light most favorable to the nonmoving party. *Ricci v. DeStefano*, 129 S.Ct. 2658, 2677 (2009); *Torgerson*, 643 F.3d at 1042.

      II.     <u>Analysis of the Law</u>

            A.     <u>Exhaustion of Administrative Remedies</u>

Defendant Kelley argues that this case should be dismissed, without prejudice, because Plaintiff has failed to timely and properly exhaust his administrative remedies against her.

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81,

89-91 (2006).

The PLRA requires inmates to: (1) fully and properly exhaust their administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process prior to filing an action in federal court.  *See Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Additionally, the United States Supreme Court has emphasized that: "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90–91. Thus, to satisfy the PLRA, a prisoner must fully comply with the specific procedural requirements of the incarcerating facility. *Id.*

To fully and properly exhaust administrative remedies, an ADC prisoner must: (1) file an informal resolution; (2) file a grievance to the Warden or the Health Services Administrator, if the informal resolution attempt is unsuccessful; and (3) appeal the denial of that grievance to an ADC Deputy/Assistant Director.[2]  Doc. #32, Ex. A (ADC Adm. Dir. 09–01 § IV(E) through (G) (January 30, 2009)); Doc. #37, Ex. A (same).

Importantly, the ADC exhaustion policy states that "[g]rievances must specifically name each individual involved for a proper investigation and response to be completed by the ADC" and that "[i]nmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." *Id.,* Ex. A at 4 (ADC Adm. Dir. 07–03 § IV(C)(4)).  Finally, the grievance forms themselves remind prisoners that they must "be *specific* as to the complaint, date, place, *personnel involved*

---

[2] Defendant Kelley is the ADC Deputy Director who reviews all grievance appeals regarding medical issues. Doc. #32, Ex. B.

and how you were affected." *Id.*, Ex. A at 18 (emphasis added).

In this case, it is undisputed that Plaintiff fully exhausted only three grievances specifically naming Defendant Kelley. The Court will discuss each of those grievances separately.

1.    <u>Grievances EAM 10-1199 and GR 10-1034</u>

In Grievance EAM 10-1199, Plaintiff alleged that a grievance officer failed to respond to several of his informal resolutions within one day, as required by the ADC exhaustion policy. Doc. #32, Ex. D at 10 and 11.  That grievance was denied by the Health Services Administrator. *Id.*  In his appeal, Plaintiff wrote: "You people need to do your job (Wendy Kelley)." *Id.* at 10 (parenthesis in the original).  *Id.*   On appeal, Defendant Kelley explained to Plaintiff that, if he did not timely receive a response to his informal resolutions, he could immediately proceed to the next step by filing a formal grievance. *Id.*  Accordingly, she denied his appeal of Grievance EAM 10-1199 as having no merit. *Id.*

In Grievance GR10-1034, Plaintiff stated that he was "submitting this complaint against the Arkansas Department of Correction, Ray Hobbs, Director, and Larry B. Norris" for violating ADC policies and several provisions of the U.S. Constitutional by allowing "Wendy Kelley, Deputy Director of Health and Correctional Programs" to review medical grievance appeals, even though she does not have any medical training or expertise.  Doc. #32, Ex. D at 28-30.  In resolving Grievance GR10-1034, the Warden explained that Defendant Kelley "does not practice medicine and her review of the medical and mental health grievances involves determining if policies and procedures have been followed and that care is being provided by licensed individuals." *Id.* at 29.  Accordingly, the Warden denied the grievance as having no merit, and

-4-

that decision was affirmed on appeal by ADC Deputy Director Marvin Evans.  *Id.*

In Grievances EAM10-1199 and GR10-1034, Plaintiff complained about the way his informal resolutions were being *processed*.   In other words, Plaintiff was complaining about alleged inadequacies in the ADC's *grievance procedure.  See Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (explaining that prisoners do not have a constitutional right to a prison grievance procedure, and thus the failure to properly respond to a grievance, process a grievance, or rule on a grievance is not actionable under § 1983); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (same).

Plaintiff did *not* allege, as he does in this lawsuit, that Defendant Kelley failed to take proper *corrective action* in response to his grievance appeals about the *medical care* he received for chronic digestive problems, neuritis or neuralgia in his neck, Peyronie's disease, erectile dysfunction, and migraine headaches.  Thus, Plaintiff cannot rely on Grievances EAM10-1199 and GR10-1034 to establish that he has properly exhausted the claims he has asserted against Defendant Kelley in this case.

2.      Grievance GR10-1466[3]

On December 8, 2010, Plaintiff wrote Grievance GR10-1466, which stated:

---

[3]  On September 29, 2011, the Court denied Defendant Kelley's first request for dismissal because she failed to provide any evidence to support her argument that Plaintiff failed to exhaust his administrative remedies. Docs. #17 and #19.  In reaching that conclusion, the Court specifically noted that it needed additional information to determine whether Grievance GR10-1466, which was attached to the Complaint, established exhaustion as to any of the claims raised in this case.  *Id.* at 8-9.  Additionally, Plaintiff referred to Grievance GR10-1466 in his summary judgment papers, and he attached another copy of that grievance to his Statement of Disputed Facts. Doc. #36 at 3; Doc. #37, Ex. B.  Nevertheless, for *unexplained reasons*, Defendant Kelley did not address, or even acknowledge, GR10-1466 in *any* of her summary judgment papers.

> I am submitting this complaint against Wendy Kelley, ADC Deputy
> Director of Health and Human Services for deliberate indifference to my health
> for *over a period of time*.  Kelley has failed to do her job of ensuring my health as
> a result.  I have an *acute/chronic digestive system problem* and also still suffering
> from it.  Kelley failed to ensure that screening was done, medications were
> dispensed properly, a doctor was available at all times, doctor's appointments
> were scheduled correctly, etc.

Doc. #37, Ex. B at 34 (emphasis added).

In Grievance GR10-1466, Plaintiff attempts to challenge Defendant Kelley's review of the numerous grievances appeals he filed about the medical treatment he received for his *chronic digestive system* problems.  Importantly, Plaintiff did not mention, at all, Defendant Kelley's alleged failure to take proper corrective action in response to his grievance appeals about the medical care he received for: (1) neuritis or neuralgia in his neck; (2) Peyronie's disease; (3) erectile dysfunction; or (4) migraine headaches care.  Thus, Plaintiff's claims that Defendant Kelley failed to take proper corrective action in regard to those medical problems are dismissed, without prejudice, due to a lack of exhaustion.

The Court must now decide whether Grievance GR10-1466 constitutes proper exhaustion as to Plaintiff's claim that Defendant Kelley failed to take proper corrective action in response to his grievance appeals challenging the medical care he received for chronic digestive system problems.

Defendant Kelley[4] addressed Plaintiff's appeal of the denial of Grievance GR10-1466 as

---

[4] Plaintiff alleges that it was a violation of the ADC exhaustion policy for Defendant Kelley to respond to the appeal of Grievance GR 10-1466, which specifically named her.  Doc. #32, Ex. A (ADC Admin. Dir. 09-01 § IV(H)(6) (providing that: "No employee should respond to a grievance that is alleging misconduct by that employee against the inmate unless the inmate still has another step in the grievance process to challenge the conduct or the inmate is alleging indirect misconduct").  However, as previously explained, Defendant Kelley's alleged failure to comply within the ADC exhaustion procedure does not rise to the level of a constitutional violation.  *See Lomholt,* 287 F.3d at 684; *Buckley,* 997 F.2d at 495.

follows:

> I am not a physician nor licensed to provide medical care, cannot dispense medications, and do not schedule doctor visits. I do respond to appeals of grievance decisions involving medical and mental health services, and supervise the Administrator for Medical and Dental Services who serves as the contract monitor for the medical contract with CMS, among other duties.  You did not state what medical care you did not obtain in your grievance, but stated that I had not ensured your health and as a result, you were suffering from an acute/chronic digestive system problem. You have not been seen for your acute/chronic digestive system problem in the last thirty days; in fact, your electronic medical record reflects your last complaint regarding this issue was December 3, 2010, when you reported heartburn and stated that the Tums helped better than Maalox. On September 8, 2010, you informed APN Simmons that Dr. Nance had prescribed naproxen despite knowing it damages your digestive system; you are able to refuse medical treatment including prescriptions.

Doc. #37, Ex. B. at 35.

Defendant Kelley then went on to explain that, during Plaintiff's most recent March 11, 2011 visit to the infirmary, he complained about other medical issues, and not digestive system problems. *Id.* Similarly, on March 18, 2011, Plaintiff was seen by a doctor about a foot problem, and he did not mention any chronic digestive system problems or other "urgent health needs." *Id.* Accordingly, Defendant Kelley denied his appeal as having no merit. *Id.*

The ADC exhaustion policy requires a grievance to address only one issue and to be specific.  Doc. #32, Ex. A at 5 (ADC Admin. Dir. 09-01 at § D(2) and E(2) (explaining that a grievance "should only address one problem/issue and not multiple problems/issues" and should be "specific" as to "date" and "place")).  Similarly, the ADC exhaustion policy requires that a grievance be filed 15 days after the alleged incident, which in this case would have been 15 days after Defendant Kelley denied any of Plaintiff's specific grievance appeals about the medical

care he received for chronic digestive problems.[5]  *Id.* (ADC Admin. Dir. 09-01 at § E(1)
(providing that the grievance "shall be completed and submitted within 15 days after the
occurrence of the incident")).

In Grievance GR10-1466, Plaintiff made the vague and overly broad assertion that "over
a period of time," Defendant Kelley failed to take proper corrective action in response to
unspecified grievance appeals he filed challenging unspecified medical treatment he received for
chronic digestive system problems.   Plaintiff did not identify which specific grievance appeals
Defendant Kelley improperly denied, the dates Defendant Kelley denied those grievance
appeals, or the specific medical treatment (or lack thereof) Plaintiff challenged in those
grievance appeals.      Thus, Defendant Kelley could have denied Grievance GR10-1466, *in
total*, on the procedural grounds that it was not specific and/or timely filed.  Instead, Defendant
Kelley reached the merits of a very small portion of Grievance GR10-1466, which dealt with the
medical care Plaintiff received, from September 8, 2010 to March 18, 2011, for chronic digestive
system problems.

The Eighth Circuit has recently clarified that "the PLRA's exhaustion requirement is
satisfied if prison officials decide a procedurally flawed grievance on the merits."  *Hammett v.
Cofield,* __ F.3d __, 2012 WL 2160825, *1 (8th Cir. June 15, 2012) (slip opinion to be
published).  In other words, any issue that prison officials address on the merits, is properly

---

[5] In other words, to properly exhaust his corrective inaction claims against Defendant
Kelley, Plaintiff should have: (1) filed a medical grievance alleging that prison nurses or doctors
(identified by name) failed to provided him with adequate medical care for a specific medical
problem; (2) appealed the denial of that medical grievance to Defendant Kelley; (3) within 15
days after Defendant Kelley denied his appeal, file a *new* grievance explaining how Defendant
Kelley's investigation and resolution of his medical grievance appeal was improper and
constituted corrective inaction; and (4) appeal the denial of any such grievance against
Defendant Kelley.

exhausted despite the existence of a procedural flaw.

In ruling on Grievance GR10-1466, it appears that Defendant Kelley *reached the merits* of Plaintiff's allegation that she failed to take proper corrective action in response to unspecified grievance appeals he filed about the medical care he received, from September 8, 2010 to March 18, 2011, for chronic digestive system problems.  Thus, the Court will err on the side of caution and conclude that Plaintiff exhausted his administrative remedies only in regard to that *limited and narrow claim*.   All other claims Plaintiff has raised against Defendant Kelley in this lawsuit are dismissed, without prejudice, due to a lack of exhaustion.

B.  Merits of Plaintiff's Sole Surviving Inadequate Medical Care Claim Against Defendant Kelley

Defendant Kelley also argues that she is entitled to judgment, as a matter of law, on the merits of the only exhausted inadequate medical care claim that Plaintiff has asserted against her. This argument is well taken.

To succeed with an Eighth Amendment claim based on inadequate medical care, a plaintiff must prove that:  (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious  needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).  Moreover, negligence, gross negligence, or a mere disagreement with the treatment decisions does not rise to the level of a constitutional violation. *Lanford,* 614 F.3d at 460; *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Importantly, there is no respondeat superior liability in § 1983 actions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010).  Thus, a prison supervisor cannot be held vicariously liable for the unconstitutional acts of his subordinates.  *Id.*

However, a supervisor may be held liable if he fails to take corrective action in response to a known constitutional violation. *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995).

Specifically, the Eighth Circuit has held that prison supervisors, who lack medical training, may be held liable if they fail to take corrective action in response to a known lack of adequate medical treatment. *See Schaub v. VonWald*, 638 F.3d 905 (8th Cir. 2011) (finding a prison director, who had no medical training, violated a prisoner's Eighth Amendment rights when he ignored a doctor's orders that a paraplegic prisoner needed specialized care and accommodations, and then falsely assured the sentencing judge that his facility could provide those accommodations and care); *Langford,* 614 F.3d 445 (8th Cir. 2010) (holding that a prison administrator, who had no medical training, was not entitled to qualified immunity from two prisoners' claims that he failed to take any corrective action after receiving letters describing the inadequate medical care they received for their serious medical needs).  However, there is no evidence of any such corrective inaction this case.

It is undisputed that Defendant Kelley has no medical training or expertise. Doc. #32, Ex. B (Kelley Declaration); Doc. #37 (Plaintiff's Statement of Disputed Facts).  Similarly, she does not have the authority to diagnosis illnesses,  make treatment decisions, or override a medical provider's treatment decisions. *Id.*  Instead, her sole responsibility when reviewing medical grievance appeals is to ensure that medically trained personnel are responding to a prisoner's request for care.  *Id.* Plaintiff has failed to come forward with *any evidence* suggesting that Defendant Kelley was deliberately indifferent in caring out these duties.  Specifically, he has not produced *any evidence* demonstrating that she failed to take proper corrective action in regard to

any grievance appeal he filed challenging the medical care he received, from September 8, 2010 to March 18, 2011, for chronic digestive problems. Similarly, he has not produced *any* evidence demonstrating that the medical care he received for his chronic digestive system problems during that time period was constitutionally inadequate. Thus, there is no indication that Defendant Kelley needed to take any type of corrective action.

Instead, Plaintiff has set forth a mere disagreement with the course of care that was being given to him by medically trained personnel. *See Lanford,* 614 F.3d at 460 (providing that negligence, gross negligence, and a mere disagreement with the course of medical care do not rise to the level of a constitutional violation). The parties *agree* that Defendant Kelley did not have the authority to render medical treatment of override the treatment decisions made by those medically trained personnel. *See Drake ex rel Cotton v. Koss*, 445 F.3d 1038, 1042-43 (8th Cir. 2006) (explaining that prison supervisors, who lack medical expertise, cannot be held liable for treatment decisions made by medically trained prison staff); *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) (same); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (same).

Accordingly, the Court concludes that Defendant Kelley is entitled to judgment, as a matter of law, on the merits of Plaintiff's claim that she failed to take proper corrective action in response to unspecified grievance appeals he filed about the medical care he received, from September 8, 2010 to March 18, 2011, for chronic digestive system problems. Accordingly, that claim is dismissed, with prejudice.

C.     Request to Impose a Strike

Defendant Kelley argues that the dismissal of this case should constitute a strike, as defined by 28 U.S.C. § 1915(g), because Plaintiff has previously raised similar corrective

inaction claims against Defendant Kelley in *Conway v. Corr. Med. Servs., Inc.,* 2:10CV00010.

Defendant Kelley was dismissed, without prejudice, from 2:10CV0010 because Plaintiff failed to properly exhaust his administrative remedies against her. *See* 2:10CV00010, Doc. #132. After attempting to properly exhaust his administrative remedies against Defendant Kelley, Plaintiff filed this lawsuit.[6]

The Court is now dismissing this lawsuit because: (1) Plaintiff's subsequent attempts at exhaustion were unsuccessful as to all of his claims against Defendant Kelley except one; and (2) as to the exhausted claim, Defendant Kelley is entitled to judgment as a matter of law.

The PLRA provides that a court may impose a "strike" only if the case is "dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). The dismissal of this action does not fall under any of those three categories. Thus, a strike will not be imposed.

III.     Conclusion

Defendant's Motion for Summary Judgment (Doc. #30) is GRANTED. Plaintiff's claim that Defendant Kelley failed to take proper corrective action in response to his grievance appeals regarding the medical treatment he received for chronic digestive problems from September 8, 2010 to March 18, 2011, is DISMISSED, WITH PREJUDICE. All other claims Plaintiff has raised against Defendant Kelley in this lawsuit are DISMISSED, WITHOUT PREJUDICE, due to a lack of exhaustion. The Court CERTIFIES pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal would not be taken in good faith. The Clerk is directed to close the case.

---

[6]   In a Motion to Dismiss, Defendant Kelley previously argued that the doctrines of collateral estoppel and res judicata precluded Plaintiff from bringing this lawsuit against her. The Court rejected that argument because 2:10CV00010 was not an adjudication on the merits of any corrective inaction claim Plaintiff had raised against Defendant Kelley. Docs. #17 and #18.

IT IS SO ORDERED this __29__ day of June, 2012.


James M. Moody
United States District Judge